# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Irvin Virgil WAUNEKA Jr. (YOB 1989) | ) ) ) ) ) | Case No. 24MJ1399 BPB |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 22, 2024** in the county of **San Juan County** in the _____ District of **New Mexico**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed in Indian Country |
| 18 U.S.C. § 1112(a) | Involuntary Manslaughter |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Timothy Hughes, Special Agent
*Printed name and title*

Telephonically sworn and electronically signed.

Date: 09/26/2024

*Judge's signature*

City and state: Farmington, New Mexico

Hon. B. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

Print | Save As... | Attach | Reset

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Timothy K. Hughes, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, state:

### AGENT BACKGROUND

1. This affidavit is made in support of the Criminal Complaint for IRVIN VIRGIL WAUNEKA JR., year of birth 1989.

2. I am a Special Agent with the FBI. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). As a Special Agent, I am empowered by law to investigate and make arrests for violations of the laws of the United States enumerated in Title 18, United States Code.

3. I have been employed by the FBI since October of 1995. I have been a Special Agent since 2007. I am currently assigned to the San Francisco Office of the FBI, and I have investigated cases involving narcotics trafficking, street gangs, and violent crime. I have received training at the FBI Academy in Quantico, Virginia, including training on criminal organizations, criminal case management, informant development, Title III (wiretap) investigations, and the use, packaging, and sale of controlled substances. I have participated in approximately one hundred and seventy five local and federal search warrants and arrests involving alleged narcotics trafficking and gangs, and I have participated in approximately one hundred investigations of narcotics traffickers and gangs. I have received training in advanced telephone analysis, concealed compartment detection, gang prosecution, social media and narcotics, and California state wiretap investigations. I have been the affiant in four wire-tap applications.

4. I have also been involved in the investigation of numerous state and federal crimes, to include homicides, domestic terrorism, public corruption, gun trafficking, bank and

1

commercial robbery. I have received training in Special Weapons and Tactics ("SWAT") and Emergency Medical Technician. I am currently assigned to the San Francisco Division's East Bay Safe Streets Task Force, as well as the San Francisco Division's SWAT team and Operational Medical Program. I am currently on a Temporary Duty Assignment to the Albuquerque Division of the FBI at the Farmington Resident Agency as a part of Operation Not Forgotten, an FBI initiative to surge resources to investigate the murder and disappearance of Native American women and girls.

5. Based on my training, experience, and the facts set forth in this affidavit, I believe there is probable cause that IRVIN VIRGIL WAUNEKA JR. (year of birth 1989) committed Involuntary Manslaughter in Indian Country in violation of 18 U.S.C. §§ 1153 and 1112(a).

6. Since this affidavit is being submitted for the limited purpose of demonstrating that there is probable cause to believe that WAUNEKA committed Involuntary Manslaughter, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to support the issuance of the criminal complaint and arrest warrant.

**PROBABLE CAUSE**

7. On September 22, 2024, FBI Special Agent Lorraine Hardy and I were notified by Navajo Nation Criminal Investigator Jefferson Joe ("CI Joe") that a multiple-vehicle car crash had occurred in the early morning hours of September 22, 2024, on Route 5, Shiprock, New Mexico, at the approximate GPS coordinates of 36.349747, -108.633432. This location in within the boundaries of the Navajo Nation. This location is also within San Juan County and within the District of New Mexico.

8. According to the initial report by CI Joe, Navajo Nation Police Department (NNPD) officers and emergency services personnel were contacted via 911, responded to the

scene of the crash, and discovered that a Chevrolet Malibu (New Mexico License plate PSM688) had collided with a Toyota Highlander SUV (Colorado license plate DUAK69). According to CI Joe, IRVIN VIRGIL WAUNEKA JR. ("WAUNEKA") (year of birth 1989) had been driving the Chevrolet Malibu eastbound on Route 5 with a passenger—later identified as JANE DOE, year of birth 1986—in the front right seat of the vehicle. CI Joe also relayed to me and SA Hardy that Y.A. (year of birth 1980) had been driving the Toyota Highlander SUV westbound on Route 5. Three of Y.A.'s family members were in the Toyota Highlander: CA., year of birth 1984, S.R., year of birth 2010, and A.A., year of birth 2007.

9. Following the crash, WAUNEKA, Y.A., C.A, S.R., and A.A. were transported to San Juan Regional Medical Center (SJRMC) in Farmington, New Mexico, by EMS personnel to be treated for their injuries.

10. Special Agent Hardy and I arrived at SJRMC in the early morning hours of September 22, 2024, and interviewed WAUNKEA shortly after he had been examined and had received medical treatment. An audio recording of this interview was made, and I have reviewed it. Special Agent Hardy and I informed WAUNEKA of our identities and the purpose of the interview. Special Agent Hardy then advised WAUNEKA of his Miranda rights from an FBI FD-395 form. WAUNEKA stated he understood his rights and wished to speak with us.

11. According to his statement, WAUNEKA had attended a concert in Farmington, New Mexico on the night of September 21, 2024. This concert took place at the Three Rivers Pub. During the concert, WAUNEKA consumed approximately half of a liter of Jim Beam whiskey. Afterwards he got in his Chevrolet Malibu and drove his girlfriend, JANE DOE, towards their home in Fort Defiance, Arizona.

12. WAUNEKA stated that he fell asleep while driving and that his next memory was of his car crashing into another vehicle on the highway that was travelling in the opposite direction. After the crash, WAUNEKA got out of his vehicle and attempted to render aid to

JANE DOE, who was motionless in the front passenger seat. Shortly after emergency personnel arrived, WAUNEKA was transported to SJRMC to be treated for his injuries.

13. WAUNEKA provided Special Agent Hardy and I with consent to have medical personnel draw his blood for testing, and for the FBI to search his Chevrolet Malibu and his Apple iPhone. His consent was documented on FBI FD-26 Consent to Search forms.

14. Special Agent Hardy and I also interviewed Y.A. at SJRMC on September 22, 2024, after she arrived for treatment. According to her statement, she was driving her family from Arizona to their home in Colorado when she observed a car driving towards them in the wrong lane. Y.A. said she swerved to avoid the vehicle, but the oncoming vehicle collided with her vehicle.

15. Special Agent Hardy and I responded to the crash site and met with CI Joe. We observed two vehicles in the center of the two-lane road, both facing northbound. Both vehicles showed signs of extensive damage consistent with a high-speed crash. We also observed the body of JANE DOE in the front passenger seat of the Chevrolet Malibu.

16. A search of both vehicles was conducted according to FBI protocols. Photographs and a sketch of the scene were prepared to document the search. The search of the Toyota Highlander, driven by Y.A., did not reveal any drugs or alcohol inside the vehicle. The search of the Chevrolet Malibu revealed several empty containers of alcohol, including two bottles of Jim Beam whiskey—one was empty; the other was almost empty. Jim Beam whiskey is the same alcoholic beverage that WAUNEKA admitted to drinking prior to driving home.

17. On September 24, 2024, I interviewed Y.A. for a second time. This interview took place at her residence following her release from SJRMC. According to Y.A., she was driving a rented Toyota Highlander, accompanied by her daughter, S.R., sister, C.A., and niece, A.A., from Arizona to Colorado. Y.A. stated she was operating the vehicle in a safe manner. While driving, she observed a vehicle approaching them head-on at a high rate of speed, which

she estimated to be approximately 90 miles an hour. The vehicle was in the wrong lane. Y.A. swerved to avoid a collision, but the oncoming vehicle swerved too, and the two automobiles collided.

18. After the crash, Y.A. and her family members got out of the vehicle. She observed the driver of the oncoming vehicle, WAUNEKA, walking around the scene of the crash and repeatedly saying "I'm sorry." Y.A. also observed that WAUNEKA was unsteady on his feet and appeared to be intoxicated.

19. I also interviewed two of the passengers in the Toyota Highlander: C.A., who was seated in the front right passenger seat, and A.A., who was seated in the rear driver's side seat. Both stated that the oncoming car was being driven at a high rate of speed and in the wrong lane. A.A. stated that WAUNEKA expressed remorse after the crash by repeatedly saying "I'm sorry."

20. On September 24, 2024, I reviewed medical records from SJRMC and police reports from NNPD associated with WAUNEKA. According to the SJMRC records, a test of WAUNEKA's blood was conducted at 3:27 a.m. on September 22, 2024, which revealed a blood alcohol level of 0.125. This level of alcohol in the blood is consistent with significant impairment. A review of NNPD records indicate WAUNEKA has been previously arrested for driving while impaired on multiple occasions.

21. I also reviewed information provided by CI Joe, which confirmed that WAUNEKA is an enrolled member of the Navajo Nation and that the scene of the collision is within the boundaries of the Navajo Nation.

## CONCLUSION

22.     Based on these facts, I submit that there is probable cause to believe that WAUNEKA violated federal criminal statutes 18 U.S.C. §§ 1153 and 1112(a), that is, Involuntary Manslaughter in Indian Country.

23.     Assistant United States Attorney Jena Ritchey reviewed and approved this affidavit for legal sufficiency to establish probable cause.


Electronically SUBSCRIBED and telephonically SWORN to me on September 26, 2024.

_____
Timothy Hughes
Special Agent
Federal Bureau of Investigation

_____
Honorable B. Paul Briones
United States Magistrate Judge